**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES ROMANOWSKI,<br><br>Claimant,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No.: 2:14-cv-06652 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

### I. INTRODUCTION

Before the Court is Claimant James Romanowski's appeal ("Claimant") seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under §§ 216(i) and 223(d) of the Social Security Act ("SSA"). For the reasons set forth below, this Court concludes the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and remanded for further consideration consistent with this Opinion.

### II. BACKGROUND

#### A. Procedural Background

On September 14, 2011, Claimant applied for DIB. The application was denied initially in April 2012. (Plaintiff's Brief Pursuant to Local Rule 9.1 ("Pl. Br."), ECF No. 11 at 2.) On February 7, 2013, a hearing was held before ALJ Timothy Wang. (Id.) On February 13, 2013, the ALJ concluded Claimant was not disabled under §§ 216(i) and 223(d) of the SSA. (Id. at 21.) Claimant requested review of the decision and the Appeals Council denied the request on August

27, 2014. (Id. at 2.) On October 27, 2014, Claimant instituted this action. (ECF No. 1.)

## B. Factual Background

Claimant was born on October 25, 1971. (Tr.[1] at 19.) Claimant graduated from high school in 1989 and completed some college courses. (Id. at 54, 146.) Claimant worked from 1996 to 2006, holding jobs as a sales representative, pet products manager, and store manager. (Id. at 146.) Claimant states he stopped working on October 4, 2006, after he injured his lower back and left foot at work. (Pl. Br. at 3). Claimant received worker's compensation benefits until October 2012. (Tr. at 55.)

Claimant currently lives with his wife and three minor children. (Id. at 55.) Claimant has a driver's license. (Id. at 59.) Claimant testified he typically drives only up to six miles away from his home and his 75-mile drive to the administrative hearing was the farthest distance he had driven since being injured. (Id. at 59-60.) Claimant testified his farthest trip as a car passenger since his injury was to Wildwood, New Jersey, which took approximately two-and-a-half hours. (Id. at 60.) Claimant testified he took a twelve-day vacation to Florida in 2011 or 2012, where he spent time in Disney World, id. at 61-62, and he took a two-day camping trip with his family in 2012, id. at 65-66.

On a regular basis, Claimant uses a riding mower to cut his lawn, reads the newspaper, watches television and movies, cares for his personal needs, picks up his children from the bus stop, and bends over to tie his shoes. (Id. at 66-68, 74-75, 78.)

After his injury, on May 10, 2007, Claimant underwent surgical curettage and bone-grafting. (Pl. Br. at 4.) Then, from January 2008 to October 2008, Claimant was treated at Tri-

---

[1] "Tr" refers to the certified record of the administrative proceedings. (ECF No. 6.)

County Orthopaedic & Sports Medicine, Inc., where he was primarily seen by Charles Gatto, M.D., and Michael Goldberger, M.D., for neck, back, and left foot pain complaints. (Tr. at 168-86.) At that time, Claimant received epidural steroid injections, sural nerve injections, and was treated with a Liboderm patch. (Id. at 171, 173, 176, 179-80.) In April 2008, a functional capacity evaluation ("FCE") revealed Claimant was capable of performing light to medium work, including his essential duties as a manager, and Dr. Gatto recommended Claimant return to work. (Id. 176-78.)

In July 2009, Claimant consulted with John Valenza, M.D., for a second opinion about treatment. (Id. at 454-55.) Claimant was treated by Dr. Valenza on a monthly basis through March 2010, where he was given a Duragesic patch (100 mg) and prescribed Nucynta (100 mg) up to six times daily. (Id. at 435-61.) In April 2010, Claimant underwent surgery (specifically, L4-L5 anterior and posterior lumbar interbody fusion with iliac crest autograph, interbody spacer, and pedicle screw fixation). (Id. at 187-207.)

Following his 2010 surgery, Claimant resumed treatment with Dr. Velanza, which he continued through September 2010, when he was last insured for benefits. (Id. at 427-35.) In July 2010, Claimant underwent a second FCE, which revealed Claimant retained the ability to perform a range of medium exertional work. (Id. at 384.) As of September 2010, Claimant's pain management treatment consisted of using a Duragesic patch (75 mg) every 48 hours and taking Roxicodone (30 mg) up to six times daily. (Id. at 427-35.)

In addition to his pain management treatment, Claimant received mental health treatment for feelings of anger and depression following his work-related injury. (Id. at 208-422, 458-602.) From November 2009 through the date he was last insured, Claimant attended individual

3

psychotherapy and medication checks with psychiatrist Harish Malhorta, M.D. (Id. at 208-422, 458-602). As of September 2010, Claimant's mental health treatment consisted of using Zoloft (200 mg) daily and Trazadone. (Id. at 427.)

In April 2012, state agency physician James Upchurch, M.D., reviewed all of the medical evidence from the date of the injury through the date last insured, and opined Claimant could perform a modified range of light work. (Id. at 671.) On April 27, 2012, state agency mental health consultant Angela Register, Ph.D., reviewed the medical evidence for the same time period and opined Claimant had only some moderate limitations in social functioning. (Id. at 657-70.)

## III.   LEGAL STANDARD

### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"

4

Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 Fed. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.   Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a claimant must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

5

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C.     Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the claimant has an impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the claimant can perform. Id.

The evaluation continues through each step unless it is determined at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

## IV.    DISCUSSION

### A.     Summary of the ALJ's Findings

At step one, the ALJ found that Claimant met the insured status requirements of the SSA

6

and has not engaged in substantial gainful work activity from the onset date of the alleged disability through his date last insured on September 30, 2010. (Tr. at 12.) Although the Claimant's wage record revealed some earnings in 2007, the ALJ determined this work did not rise to the level of "substantial gainful activity." (Id.)

At steps two and three, the ALJ found Claimant's impairments were "severe," but not severe enough to meet, either individually or in combination, any of the impairments in the Listings. (Id. at 12-14.) The ALJ determined Claimant had the following severe impairments: (1) degenerative disc disease of the lumbar spine, (2) status post-surgery, (3) depression, and (4) status-post fracture and surgery of the left foot. (Id. at 12.) With respect to Claimant's physical impairments, the ALJ found "[t]he claimant has a 'severe' impairment within the meaning of the applicable regulations, but the impairments do not meet or medically equal any of the listed impairments." (Id. at 13.) With respect to Claimant's mental impairments, the ALJ examined the "paragraph B" and "paragraph C" criteria. (Id. at 13-14.) The ALJ found: (1) in activities of daily living, Claimant has a mild restriction; (2) in maintaining social functioning, Claimant has a mild restriction; (3) in maintaining concentration, persistence, or pace, Claimant has a moderate restriction; and (4) Claimant has experienced no episodes of decompensation of extended duration. (Id.) The ALJ also noted "claimant has not demonstrated a complete inability to function independently outside the area of his home." (Id. at 14.) Thus, the ALJ found Claimant's mental impairments were not severe enough to meet any of the listed impairments. (Id.)

The ALJ concluded Claimant has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), with the additional limitations of "occupations that could be performed with use of a cane for ambulation" and "occupations that required no more than occasional postural

maneuvers, such as balancing, stooping, kneeling, crouching, and climbing on ramps and stairs." (Id.) Further, the ALJ determined Claimant (1) must "avoid occupations that required climbing on ladders or crawling"; (2) "must be afforded the option to sit and stand during the workday, for brief periods of 1-2 minutes every one-half hour or so"; and (3) "was limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes." (Id.) To make this conclusion, the ALJ considered all symptoms and their consistency with the evidence.

Specifically, the ALJ considered the medical evidence which demonstrated that, while exertional and postural limitations were supported by the evidence, Claimant was capable of performing at the sedentary range of exertional level. (Id. at 18.) The ALJ noted during Dr. Gatto's January 29, 2008 medical examination of Claimant, where Dr. Gatto reviewed a January 23, 2008 magnetic resonance imaging study ("MRI") of Claimant's lumbar spine, Dr. Gatto found Claimant "was alert and oriented to person, place, and time"; "had normal mood and affect"; "had no skin lesions in his thoracic or lumbar spine"; "alignment was normal"; "[t]here was no atrophy and no pain to palpation"; "[s]traight leg raise testing was negative"; and Claimant "had a normal gait and normal coordination" and "was able to walk on his heels and his toes well with good balance and stability." (Id. at 16.) The ALJ also reviewed Claimant's medical treatment with Dr. Valenza following Claimant's 2010 surgery, where Dr. Valenza noted "claimant has been alert and oriented to person, place, and time"; "[h]igher cognitive functions [are] intact"; "[h]is gait has only been described as mildly antalgic, with a straight cane"; and Claimant reported "his medications are giving him a better quality of life and allowing function." (Id.)

8

The ALJ also considered the medical evidence regarding Claimant's psychological impairment. (Id. at 17-18.) The ALJ noted Dr. Malhorta stated Claimant "has no psychiatric contraindications to return to work"; Claimant's global assessment of functioning ("GAF") scores indicate only a moderate impairment; Claimant is generally independent in his daily activities; and "claimant testified that he no longer goes for psychiatric treatment, as he feels it did not help him" and "stated that he no longer takes medications for any psychiatric conditions and he stopped treatment approximately one year ago." (Id. at 17.) The ALJ further considered the opinion evidence of Drs. James Vizza and Angela Register, consulting physicians for the state agency, where they noted "claimant would have only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace." (Id.)

Additionally, the ALJ considered Claimant's subjective complaints of depression, having memory issues, and being absentminded and forgetful. The ALJ determined that, while Claimant could not be expected to engage in anything but simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and relatively few workplace changes, greater limitations on mental work-related activities are not supported by the record as a whole. (Id. at 15, 18.)

At step four, the ALJ found because Claimant is only capable of performing sedentary, unskilled work, Claimant is unable to perform his past job as a retail sales manager because that is "a light, skilled job" and Claimant is unable to perform his past job as a retail sales clerk because that is "a light, semi-skilled job." (Id. at 19.)

Finally, at step five, the ALJ considered Claimant's age, education, work experience, and

9

RFC and concluded Claimant has the ability to work in jobs that exist in significant numbers in the national economy. (Id.) The ALJ emphasized Claimant was only 38 years old on the date last insured, which is defined as a younger individual, and Claimant is able to communicate in English. (Id.) To determine the effect of Claimant's nonexertional limitations on his ability to work, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with the Claimant's age, education, work experience, and RFC. (Id.) The VE testified Claimant would be able to perform the requirements of representative occupations such as assembler of small parts, video monitor, and information clerk. (Id. at 19-20.) The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT") and found that "claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id. at 20.) Thus, the ALJ concluded Claimant is not disabled under §§ 216(i) and 223(d) of the SSA. (Id.)

### B. Analysis

Claimant makes the following arguments in support of his contention the ALJ's decision should be reversed: (1) The ALJ's step three finding was not supported by substantial evidence because the ALJ ignored evidence that Claimant relies on narcotic pain medications to address his pain and therefore improperly undervalued Claimant's subjective testimony regarding his pain; and (2) The ALJ's step five finding was not supported by substantial evidence because the VE's testimony is unreliable. (Pl. Br. at 16-23.) The Court will address each argument in turn.

#### 1. The ALJ's Step Three Finding

Claimant argues the ALJ's step three finding was not supported by substantial evidence because the ALJ improperly disregarded his subjective testimony regarding his pain, which

Claimant argues was entitled to "great weight." (Pl. Br. at 16-19.) Claimant argues "[t]he evidence of [his] pain disorder and need for extraordinary amounts of daily narcotic pain medications is well documented in this record," and because the "objective medical findings do in fact corroborate [his] subjective complaints, [his] testimony [regarding his pain] is entitled to 'great weight.'" (Id. at 16-17 (citing Schaudeck v. Comm'r of SSA, 181 F.3d 429, 433 (3d Cir. 1999))). Further, Claimant argues the ALJ improperly failed to provide specific and articulate reasons for discounting Claimant's subjective complaints. (Id. at 16-17.)

A claimant's allegations, standing alone, will not establish he is disabled. See 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). When evaluating credibility, the ALJ must consider the extent to which the claimant's self-reported symptoms can "reasonably be accepted as consistent with the objective medical evidence and other evidence." Id. The claimant's treatment history and daily activities are relevant factors in assessing credibility. Id. § 404.1529(c)(3).

The ALJ, as the factfinder, determines whether the claimant's subjective complaints are consistent with the objective medical evidence and, if not, the ALJ may discount them. Id. § 404.1529(c)(4). Where the ALJ "has articulated reasons supporting a credibility determination," and substantial evidence supports the ALJ's findings, that determination will be entitled to "great deference." See Horodenski v. Comm'r of Soc. Sec., 215 Fed. App'x 183, 188-89 (3d Cir. 2007) (quoting Atl. Limousine, Inc. v. NLRB, 243 F.3d 711, 718 (3d Cir. 2001)) (internal quotation marks omitted); Vancord v. Colvin, No. 13-27, 2014 WL 585413, at *2 (W.D. Pa. Feb. 14, 2014) ("[U]nder a deferential substantial evidence standard of review, it is particularly inappropriate to second guess such credibility determinations.").

Here, the ALJ considered Claimant's subjective complaints, sufficiently articulated why he found Claimant's statements to be only partially credible, and provided specific and coherent reasons for discounting Claimant's subjective complaints. (Tr. at 14-18.) As the ALJ explained, the objective medical evidence failed to support "[C]laimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms." (Id. at 16.) No treating, consulting, or reviewing physician suggested Claimant had work-preclusive limitations. (Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br."), ECF No. 14 at 12; see also Tr. at 17 ("Dr. Malhorta notes that the claimant has no psychiatric contraindications to return to work.")) Both before and after Claimant's 2010 surgery, Dr. Valenza reported Claimant appeared alert and oriented with intact higher cognitive function and had only mildly antalgic gait. (Tr. at 16.)

The ALJ further noted Claimant's activities were inconsistent with his subjective complaints. (Id. at 15, 17.) The ALJ described Claimant as generally independent in his daily activities—he attends to his own personal care, uses a riding lawnmower, drives, picks up his children from the bus stop, uses a computer, reads the newspaper, and watches television and movies. (Id. at 17.) Thus, the ALJ identified sufficient evidentiary support for his conclusion that Claimant's subjective complaints were not entirely credible and, thus, this Court will defer to the ALJ's credibility finding. See Bieber v. Dep't of Army, 287 F.3d 1358, 1365 (Fed. Cir. 2002) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal." (citing Pope v. U.S. Postal Serv., 114 F.3d 1144, 1149 (Fed. Cir. 1997))).

Moreover, the ALJ did not ignore Claimant's use of narcotic pain medication or the possible side effects of those medications. The ALJ specifically noted Claimant alleged he was "forgetful" and "absentminded" as a result of his medication use. (Tr. at 15.) However, the ALJ

12

considered and discussed Dr. Valenza's pain management records which illustrated Claimant (1) denied any aberrant use of medications or side effects, and (2) reported the medications made him more functional. (Id. at 16.) At every visit, Dr. Valenza observed Claimant appeared alert and oriented with intact higher cognitive function. (Id. at 427-57.) The ALJ further considered Dr. Malhorta's psychological treatment records and noted that Dr. Malhorta opined Claimant had no work-preclusive mental restrictions. (Id. at 17.) Finally, the ALJ gave some credit to Claimant's subjective complaints of pain as indicated by the ALJ's RFC finding, which limited Claimant to sedentary work that allowed for the use of a cane and a sit/stand option, along with numerous postural and mental restrictions. (Id. at 14.) For all of these reasons, the ALJ's step three finding was supported by substantial evidence.

### 2. The ALJ's Step Five Finding

Claimant contends the ALJ's step five finding was not supported by substantial evidence because the VE's testimony is unreliable. Claimant argues the VE's testimony is unreliable because there is a conflict between the VE's testimony and the DOT's description of the jobs the VE found Claimant could perform. (Pl. Br. at 19-22.) Specifically, Claimant asserts that although the ALJ limited him to "simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes," two of the jobs cited by the VE—video monitor (i.e., surveillance system monitor) and information clerk—are not simple and routine jobs. (Id. at 19-21.) Claimant contends the DOT assigns these jobs a "Reasoning Level" of 3 and 4,[2] respectively, and, therefore,

---

[2] A Reasoning Level of 3 requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or disagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." (Pl. Br. at 21.)

13

the jobs exceed the capability of someone who is limited to simple, routine jobs. (Id. at 20-21.) Claimant cites Zirnsak v. Colvin, 777 F.3d 607 (3d Cir. 2014), for the proposition that the ALJ's failure to address a conflict between VE testimony and DOT reasoning requirements is not harmless error where there is evidence Claimant could not perform at a given reasoning level. (Pl. Br. at 21-22.)

As a threshold matter, the ALJ met his affirmative obligation to inquire about inconsistencies in this case. At the end of the VE's testimony, the ALJ specifically asked "Is your testimony consistent with the DOT and related publications?" (Tr. at 83.) The VE responded his testimony was consistent. (Id.) The VE did not note the inconsistences in reasoning levels now argued by Claimant on appeal. Neither Claimant nor his attorney "challenged the VE on th[ese] point[s] or otherwise identified any apparent inconsistency between the VE's testimony and the DOT." Zirnsak, 777 F.3d at 617 (quoting Clawson v. Astrue, Civil Action No. 11-294, 2013 WL 154206, at *6 (W.D. Pa. Jan. 15, 2013)). The U.S. Supreme Court has ruled, however, a claimant challenging a denial of disability benefits need not preserve issues in the proceedings before the ALJ. See Sims v. Apfel, 530 U.S. 103 (2000).

In Zirnsak, the Third Circuit held "there is no bright-line rule stating whether there is a per se conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." 777 F.3d at 617. Several courts have found "there is not a 'per se conflict between a reasoning level 3 job and [a] limitation to simple, routine tasks/unskilled

---

A Reasoning Level of 4 requires a person to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists [and i]nterpret a variety of instructions furnished in written, oral, disagrammatic, or schedule form." (Id.)

14

work.'" Id. at 618 (citing Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009); Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007); Clawson, 2013 WL 154206, at *6; Simpson v. Astrue, Civil Action No. 10-2874, 2011 WL 1883124, at *7 (E.D. Pa. May 17, 2011)). These court focus "on whether a failure to inquire about or reconcile a conflict caused any harm to the claimant when determining whether remand is necessary." Id. (citing Simpson, 2011 WL 1883124, at *5).

Here, Claimant argued he was incapable of performing the jobs recommended by the VE during the relevant time period. (Pl. Br. at 19-20 (the job of a video monitor "is an important job, to assist in the protection of the public to alert authorities to crimes and disturbances and the need for corrective action [and i]t is incongruous to place that responsibility in an individual who regularly uses extraordinary high dosages of morphine to control pain"); id. at 22 ("The jobs cited by the [VE] . . . are beyond [Claimant's] remaining mental capacity.")). The ALJ's failure to reconcile the conflict between the VE's testimony and the DOT's description of the jobs the VE found Claimant could perform conceivably caused the Claimant harm and, therefore, remand is necessary. The ALJ partially credited Claimant's allegations of mental impairments. (Tr. at 18.) The ALJ noted evidence that showed Claimant had a mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (Id. at 17.) Moreover, the ALJ noted Claimant was prescribed medications such as Zoloft, Buproprion, and Alprazolam to treat his psychiatric conditions during the relevant period. (Id.)

Claimant also argues the strength requirement for assembler of small parts (the other job the VE found Claimant could perform) conflicts with the ALJ's finding that Claimant should be

limited to sedentary work.[3] The SSA and DOT both assign "physical exertion requirements" to each job available in the national economy. 20 C.F.R. § 404.1567 ("To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the [DOT]."). At Claimant's hearing, the VE testified Claimant could work as a small parts assembler. (Tr. 81-82.) The VE characterized this job as "sedentary." (Id. at 81.) The DOT, however, has assigned the job of small parts assembler a physical exertion level of "light." (Pl. Br. at 21, Ex. D.) Thus, there is an inconsistency between the VE's and the DOT's characterization of the physical exertion level required for an assembler of small parts.

Thus, on remand the ALJ must address the apparent conflict between Claimant's inability to perform more than simple, routine, and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for him by the VE. The ALJ also must address the apparent conflict between Claimant's inability to perform more than sedentary work and the light-exertion-work required by the job identified as appropriate for him by the VE.

## V.   CONCLUSION

For the foregoing reasons, the Court affirms in part and vacates in part the ALJ's decision that there are jobs in significant numbers in the national economy that Claimant can perform in conjunction with the Medical-Vocational Guidelines, and remands this case for further

---

[3] Claimant contends the DOT classifies "small parts assembler" as a light exertional job. (Pl. Br. at 21.) Light work "involves lifting no more than 20 pounds at a time" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." Id.

administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: December 22, 2015

                                                  **CLAIRE C. CECCHI, U.S.D.J**